**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BAILEY KOWALSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:18-cv-00390** |
| **v.** | ) | |
| | ) | **Hon. Paul L. Maloney** |
| **MICHIGAN STATE UNIVERSITY** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**[PROPOSED] ORDER**

AND NOW, on this ____ day of _____, 2020, after consideration of Michigan State University's Motion for Reconsideration or, in the Alternative, to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b), and any Response(s) thereto, IT IS HEREBY ORDERED that the Motion is GRANTED.


BY THE COURT:


_____
J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BAILEY KOWALSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:18-cv-00390** |
| **v.** | ) | |
| | ) | **Hon. Paul L. Maloney** |
| **MICHIGAN STATE UNIVERSITY** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

### MICHIGAN STATE UNIVERSITY'S MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

Pursuant to Federal Rule of Civil Procedure 54(b), Defendant Michigan State University ("MSU") hereby moves the Court to reconsider its August 21, 2019 Order denying MSU's motion to dismiss, or, alternatively, to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b) to the United States Court of Appeals for the Sixth Circuit. MSU's counsel asked Plaintiff's counsel by email on March 25, 2020, whether Plaintiff would concur in the motion, and Plaintiff's counsel responded that they do not concur.

Date:  March 26, 2020

Respectfully submitted,

*s/ Michael E. Baughman*

_____

Michael E. Baughman, Esq.
Attorney I.D. No. 78690
baughmam@pepperlaw.com
Kristin H. Jones, Esq.
Attorney I.D. No. 85725
joneskh@pepperlaw.com
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

*Attorneys for Defendant Michigan State Univ.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BAILEY KOWALSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:18-cv-00390** |
| **v.** | ) | |
| | ) | **Hon. Paul L. Maloney** |
| **MICHIGAN STATE UNIVERSITY** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF MICHIGAN STATE UNIVERSITY'S
MOTION FOR RECONSIDERATION OR, ALTERNATIVELY,
<u>TO CERTIFY UNDER 28 U.S.C. § 1292(B)</u>**

## <u>TABLE OF CONTENTS</u>

Page

I.  Introduction ........................................................................................................ 2

II.  Factual and Procedural Background ................................................................... 3
  A.  Plaintiff's Allegations .............................................................................. 3
  B.  MSU's Motion to Dismiss ....................................................................... 4

III.  Argument ............................................................................................................ 5
  A.  Reconsideration is Warranted Because the Sixth Circuit's Recent Decision
      in *Kollaritsch* Shows that Plaintiff May Not Rely on Incidents Involving
      Third Parties to Establish a Title IX Claim ............................................. 5

      1.  *Kollaritsch* Demonstrates That Plaintiff's Deliberate Indifference
          Claim is Legally Invalid Because it is Premised On Acts Involving
          Other Students.............................................................................. 7
      2.  *Kollaritsch* Demonstrates That Plaintiff's Deliberate Indifference
          Claim is Legally Invalid Because it Seeks To Hold MSU Liable For
          a Single Act of Sexual Assault..................................................... 9
      3.  *Kollaritsch* Makes Clear That Other Courts Have Misinterpreted
          How The Sixth Circuit Would Rule on a Policy of Indifference
          Claim............................................................................................ 9

  B.  Alternatively, the Court Should Certify Its Order for Interlocutory Appeal
      Under 28 U.S.C. § 1292(b) ...................................................................... 12

      1.  Whether Plaintiff Has Adequately Stated a Claim is a Controlling
          Question of Law............................................................................ 13
      2.  There are Substantial Grounds for Disagreement with the Court's
          August 21st Order ......................................................................... 13
      3.  Certifying the Court's August 21 Order for Interlocutory Appeal
          Would Materially Advance the Ultimate Termination of this
          Litigation...................................................................................... 18

IV.  Conclusion ......................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................16, 18

*Bates v. Dura Auto. Sys., Inc.*, No. 1:08-0029, 2009 U.S. Dist. LEXIS 67301
    (M.D. Tenn. July 29, 2009)........................................................................................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................16, 18

*Brown v. Arizona*, No. CV-17-03536-PHX-GMS, 2020 U.S. Dist. LEXIS 42039
    (D. Ariz. Mar. 11, 2020)............................................................................................18

*In re City of Memphis*, 293 F.3d 345 (6th Cir. 2002) .....................................................13

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)..............................4, 6, 7, 9, 15

*Doe v. University of Tennessee*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016) ........5, 7, 9, 17

*Estate of Hickmam v. Moore*, Nos. 3:09-CV-69 & 3:09-CV-102,  2011 U.S. Dist.
    LEXIS 28964, at *27 (E.D. Tenn. Mar. 21, 2011) ....................................................19

*Farmer v. Kan. State Univ.*, 918 F.3d 1094 (10th Cir. 2019)..........................................10

*Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791 (S.D. Ohio 2019) ................5

*Gaylord Ent'mt Co. v. Gilmore Ent'mt Group*, 187 F. Supp. 2d 926 (M.D. Tenn.
    2001) ...........................................................................................................................18

*Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998)..............6, 7, 10

*Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014).........................................................11

*Herman v. Ohio Univ.*, No. 2:19-cv-2012019, U.S. Dist. LEXIS 202813 (S.D.
    Ohio Nov. 22, 2019) ...................................................................................................11

*Karasek v. Regents of the Univ. of Calif.*, 948 F.3d 1150 (9th Cir. 2020)......................15

*Kollaritsch v. Mich. St. Univ.*, 298 F. Supp. 3d 1089 (W.D. Mich. 2017), *rev'd on
    other grounds*, 944 F.3d 613........................................................................................5

*Kollaritsch v. Mich. St. Univ.*, 944 F.3d 613 (6th Cir. 2019)..........2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 15

*Kollaritsch v. Mich. St. Univ.*, 2018 U.S. App. LEXIS 17379 (6th Cir. June 25,
    2018) .....................................................................................................................13, 19

*In re Miedzianowski*, 735 F.3d 383 (6th Cir. 2013)........................................................14

Page(s)

*Pahssen v. Merrill Community School District*, 668 F.3d 356, 363 (6th Cir. 2012) .................4, 8

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ...................................11

*Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949 (6th Cir. 2004) ..............................................................................................................5

*Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032 (GBD), 2018 U.S. Dist. LEXIS 28937 (S.D.N.Y. Feb. 21, 2018)...............................................................15

*Schaefer v. Las Cruces Public Sch. Dist.*, 716 F. Supp. 2d 1052 (D. N.M. 2010) .......................15

*Simpson v. University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007) .............5, 10, 15, 16

*South Dakota v. Dole*, 483 U.S. 203 (1987) ...............................................................11

*T.C. ex rel. S.C. v. Metropolitan Government of Metropolitan Government of Nashville & Davidson County, Tennessee*, No. 19-0508, 2020 U.S. App. LEXIS 2331 (6th Cir. Jan. 24, 2020) ...............................................................11, 12

*Thompson v. Bruister & Assocs.*, No. 3:07-00412, 2013 U.S. Dist. LEXIS 139374 (M.D. Tenn. Sept. 27, 2013) ............................................................................18

*In re Trump*, 874 F.3d 948 (6th Cir. 2017) .................................................................13, 14

*Weckhorst v. Kansas State Univ.*, No. 16-CV-2255-JAR-GEB, 2017 U.S. Dist. LEXIS 135556 (D. Kan. Aug. 24, 2017) .........................................................14

*West Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015 (W.D. Tenn. 2000).............................................................14

## STATUTES

20 U.S.C. § 1681(a) ...............................................................................................6

28 U.S.C. § 1292(b).............................................................................................2, 12, 13

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8 ............................................................................16

Federal Rule of Civil Procedure 54(b)......................................................................5

## CONCISE STATEMENT OF REASONS SUPPORTING POSITION

The Court should reconsider its August 21, 2019 Order denying Defendant Michigan State University's motion to dismiss Plaintiff's Amended Complaint, or, alternatively, certify the Order for interlocutory appeal. Plaintiff's sole remaining claim alleges that MSU caused her alleged sexual assault through an alleged policy of treating student-athletes accused of sexual assault differently than other students. Recent decisions of the Sixth Circuit, particularly *Kollaritsch v. Michigan State University*, 944 F.3d 613 (6th Cir. 2019), demonstrate that the Sixth Circuit would not recognize Plaintiff's pre-assault theory as viable under Title IX. For that reason, the Court should reconsider the August 21 Order.

But even if the Court disagrees that reconsideration is in order, it should nevertheless certify its Order for interlocutory appeal to the Sixth Circuit. The Court may certify an order for interlocutory appeal if the order (i)"involve[s] a controlling question of law"; (ii) "as to which there is substantial ground for difference of opinion"; and if (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three elements are met here.

## I.      Introduction

The only claim at issue in this case is Plaintiff's theory that Defendant Michigan State University ("MSU") is liable under Title IX for allegedly causing her sexual assault through a supposed policy of deliberate indifference to sexual misconduct by athletes. Such a claim has never been recognized by the Sixth Circuit, and that court's decisions—particularly *Kollaritsch v. Mich. St. Univ.*, 944 F.3d 613 (6th Cir. 2019) (which was decided after this Court denied MSU's Motion to Dismiss)—show that it would not accept such a theory.  Specifically, *Kollaritsch* demonstrates that the premise of Plaintiff's deliberate indifference claim is legally invalid because: 1) acts involving other students cannot be used to establish a claim under Title IX; and 2) a Title IX claim cannot be premised on a single act of sexual assault. Further, *Kollaritsch* makes clear that the District Court decision that this Court relied on that predicted that the Sixth Circuit would recognize a policy-of-indifference claim is wrong.

Accordingly, in light of *Kollaritsch*, MSU respectfully requests that the Court reconsider its August 21, 2019, Opinion and Order denying MSU's motion to dismiss.  In the alternative, the Court should certify the order for interlocutory appeal under 28 U.S.C. § 1292(b).  The questions of whether Title IX permits "policy of indifference" claims and, if so, under what circumstances, are controlling questions of law and there are substantial grounds for difference of opinion with this Court's finding that such a claim is available under the facts as alleged by the Plaintiff. Deciding this issue now, before potentially broad discovery involving highly personal information about other MSU students, would materially advance the litigation.  This Court's decision to certify its decision in *Kollaritsch* resulted in a decision from the Sixth Circuit, before discovery, making clear that the case should not go forward, saving the Court and the parties substantial resources.  If the Court does not reconsider its decision, it should certify its order denying MSU's Motion to Dismiss, just as it did in *Kollaritsch*.

-2-

I.      **Factual and Procedural Background**

A.      **Plaintiff's Allegations**

Plaintiff alleges that, while a first-year student at MSU, she was raped by three MSU basketball players, John Does 1, 2, and 3, at an off-campus apartment building after she met them at an off-campus bar. (PageID.325–26, ¶¶ 25–30).[1] Plaintiff does not allege that John Doe 1, 2, or 3 had, or that MSU knew that they had, a prior history of sexual violence, or that MSU otherwise knew anything about them that would put MSU on notice of a substantial risk that they would assault her. Instead, Plaintiff alleges that MSU "created the circumstances which permitted the sexual assault to take place" by "fail[ing] to follow normal reporting and investigative procedures when MSU athletes were involved[,] . . . cultivat[ing] an environment in which female students became vulnerable to sexual assault." (ECF 36, PageID.346 at ¶ 173).

Specifically, relying on anecdotes from the press involving other athletes that generally occurred years before John Does 1–3 were even students, Plaintiff alleges that MSU treats male athletes accused of sexual assault differently than members of the general student population.  She claims this differing treatment somehow emboldened these three basketball players to believe that they could get away with committing sexual assault, which in turn caused them to assault her at an off-campus party after an encounter at an off-campus bar. According to Plaintiff, MSU's actions violated Title IX, entitling her to recover damages.

---

[1] Citations are to Plaintiff's Second Amended Complaint, which was filed on September 5, 2019, and which MSU answered on October 4, 2019. (*See* ECF 36 & 39). MSU's motion to dismiss was directed to Plaintiff's First Amended Complaint. However, the Second Amended Complaint is substantively identical to the First Amended Complaint. Accordingly, the arguments MSU makes here and made in the motion to dismiss, and the Court's reasoning in denying the motion, apply equally to the Second Amended Complaint as they did to the First.

### B.       MSU's Motion to Dismiss

MSU moved to dismiss Plaintiff's Amended Complaint on two principal bases.  First, that

Plaintiff's "pre-assault" theory of liability is not viable under Title IX, and second, that even if it

were, Plaintiff had failed to adequately plead that MSU's conduct was the legal cause of her alleged

assault at an off-campus apartment. (ECF 25, PageID.212–224). MSU argued that Plaintiff's

allegations involving different victims and different perpetrators from years earlier, even if true,

could not "establish either that MSU acted 'with deliberate indifference to known acts of

harassment in its programs or activities,' or that MSU's alleged deliberate indifference 'cause[d

plaintiff] to undergo harassment or ma[d]e [her] liable or vulnerable to it.'" (ECF 25, PageID.216–

17 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 632, 645 (1999) (alterations in

original)).

In support of its argument, MSU pointed out that Plaintiff's theory improperly sought to

rely on MSU's handling of sexual assault claims involving other complainants and other

respondents that had no connection to her own case.  MSU relied on, among other authorities,

*Pahssen v. Merrill Community School District*, in which the Sixth Circuit held that "[b]oth the

plain language of Title IX and controlling case law demonstrate that an individual plaintiff

generally cannot use incidents involving third-party victims to show severe and pervasive

harassment." 668 F.3d 356, 363 (6th Cir. 2012); (ECF 25, PageID.218). Plaintiff's allegations

were "a step removed even from *Pahssen*, because there the prior instances of harassment involved

different victims but the same perpetrator; here, the prior instances of harassment that Plaintiff

cites involved different victims and different perpetrators and are separated in time by at least five

years." (ECF 25, PageID.218).

The Court denied MSU's motion. (*See* ECF 32). The Court first accepted that Plaintiff's

"pre-assault" theory of liability was cognizable under Title IX. Relying on *Simpson v. University*

-4-

*of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007), and *Doe v. University of Tennessee*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016), the Court concluded that Plaintiff's allegations, which were assumed to be true, plausibly alleged "that MSU maintained official policies that left her and other female students vulnerable to sexual assault by male athletes." (ECF 32, PageID.308). The Court characterized MSU's argument that Plaintiff cannot rely on third-party allegations as "a challenge to causation" that was "better suited to a motion for summary judgment." (ECF 32, PageID.310). The Court did not cite or discuss the Sixth Circuit's decision in *Pahssen*.

## II.   Argument

### A.   Reconsideration is Warranted Because the Sixth Circuit's Recent Decision in *Kollaritsch* Shows that Plaintiff May Not Rely on Incidents Involving Third Parties to Establish a Title IX Claim

This Court has the discretion to reconsider its prior orders at any time prior to entry of judgment.  *See Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."). Reconsideration is appropriate "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at the time of trial; and (3) to correct a clear error of law or to prevent manifest injustice." *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019) (quotation marks and citation omitted).  Here, the Sixth Circuit's decision in *Kollaritsch v. Michigan State University*, 944 F.3d 613 (6th Cir. 2019), decided in December, after this Court's decision on MSU's Motion to Dismiss, is an intervening change in controlling law that warrants reconsideration.  The Sixth Circuit has never adopted Plaintiff's pre-assault, policy-of-indifference theory of liability. *See Kollaritsch v. Mich. St. Univ.*, 298 F. Supp. 3d 1089, 1104 (W.D. Mich. 2017) (Maloney, J.) ("The Sixth Circuit has not published any opinion adopting a

policy of inaction theory."), *rev'd on other grounds*, 944 F.3d 613.  The Sixth Circuit's disposition of *Kollaritsch* indicates that it would not.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX does not expressly provide a civil remedy, but the Supreme Court recognized an implied, narrow cause of action for damages in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), and *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). In the context of sexual harassment between members of the school's community—known as peer-to-peer harassment—a cause of action for damages is available only when the school itself has engaged in intentional gender discrimination by making an affirmative decision not to address known, ongoing harassment in its educational programs, thereby allowing the harassment to continue.

As the Sixth Circuit emphasized in *Kollaritsch*, "[b]y design and effect, the *Davis* Court's Title IX private cause of action against a school for its response to student-on-student sexual harassment is a 'high standard' that applies only 'in certain limited circumstances.'" *Kollaritsch*, 944 F.3d at 619 (quoting *Davis*, 526 U.S. at 643).  To state a claim under Title IX, Plaintiff must allege: (1) that MSU acted "with deliberate indifference to known acts of harassment in its programs or activities," *id*. at 632; (2) that MSU's deliberate indifference, "at a minimum, cause[d] plaintiff] to undergo harassment or ma[d]e [her] liable or vulnerable to it," *id*. at 645; and (3) that the harassment caused by MSU was "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit" provided by MSU, *id*. at 633. Put another way, to plead a claim against MSU, Plaintiff must allege "(1) knowledge, (2) an act, (3) injury, and (4) causation." *Kollaritsch*, 944 F.3d at 621.

Educational institutions can only be liable under the judicially implied Title IX cause of action for their own intentional violation of the clear terms of the statute, i.e., for their own intentional gender discrimination. *Davis*, 526 U.S. at 641–42  For that reason, Title IX does not impose liability under principles of *respondeat superior* or constructive notice, because otherwise there would be "a risk that the recipient would be liable in damages not for its own official decision but instead for its employee's independent actions." *Gebser*, 524 U.S. at 285. And while an educational institution can be deemed to have acted with intentional gender discrimination where it turns a blind eye to known, ongoing harassment, thus allowing the harassment to continue, it is not liable for mere negligence. *Kollaritsch*, 944 F.3d at 621–22.  In short, Title IX prohibits intentional gender discrimination; it does not create a federal tort claim for incidents of sexual assault.

*Kollaritsch* shows that the Court's decision to deny MSU's Motion to Dismiss and recognize a "policy of indifference" claim was erroneous for at least two reasons.

> **1.**   ***Kollaritsch* Demonstrates That Plaintiff's Deliberate Indifference Claim is Legally Invalid Because it is Premised On Acts Involving Other Students.**

Under *Kollaritsch*, acts involving other students cannot be used to establish a claim under Title IX.   In denying MSU's Motion to Dismiss, this Court observed that the "policy of indifference" theory is premised on looking at sexual assaults perpetrated against ***other*** complainants by ***other*** respondents.  This Court relied on the district court's decision in *Doe v. University of Tenn.*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016), which opined that dicta in several Sixth Circuit opinions suggested that it would approve relying on the acts of third parties.  *Id.* at 806; Aug. 21, 2019 Order (ECF 32, PageID.304 (agreeing that the Sixth Circuit would recognize Title IX claims involving "situations (1) where the funding recipient was deliberately indifferent to prior acts of harassment against the same plaintiff by different third-party perpetrators and (2)

where the school had actual notice of prior harassment—by a single perpetrator—of victims other than the plaintiff.")).  But *Kollaritsch* made clear that courts may ***not*** look to other cases involving other students to establish a Title IX claim: "Ordinarily, 'deliberate indifference' means that the defendant both knew and consciously disregarded the known risk ***to the victim***." *Kollaritsch*, 944 F.3d at 621 (emphasis added). The *Kollaritsch* court thus held that "*[b]ecause the further harassment must be inflicted against the same victim, the plaintiff 'cannot . . . premise the [further harassment] element of her Title IX claim on conduct [by the perpetrator] directed at third parties.*'" *Id*. at 621–22 (quoting *Pahssen*, 668 F.3d at 363) (emphasis added).

Thus, *Kollaritsch* cites and reinforces the Sixth Circuit's decision in *Pahssen*, which this Court did not address it its August 21, 2019 decision.  *Pahssen* rejected a Title IX claim alleging that prior incidents in which the plaintiff's harasser victimized other women supported her claim because it showed that the perpetrator "presented a sexual threat to *female students*, including Jane Doe." *Pahssen*, 668 F.3d at 363 (emphasis in original; quotation marks omitted). The Sixth Circuit explained that "[b]oth the plain language of Title IX and controlling case law demonstrate that an individual plaintiff generally cannot use incidents involving third-party victims to show severe and pervasive harassment." *Id*. "Incidents involving third-party victims lack relevance unless the plaintiff can show that the incidents deprived *her* of such access" to educational opportunities. *Id*. (emphasis added). The Sixth Circuit's holding "accords with the general principle that plaintiffs must assert their own legal rights and interests, and cannot rest a claim to relief on the rights or interests of third parties." *Id*.  In light of *Kollaritsch*, MSU respectfully submits it was error for the Court not to find that *Pahssen* precludes Plaintiff's "policy of indifference" claim.

That is particularly so because, as explained above, this Court relied on the district court's decision in *University of Tenn.* for the proposition that the Sixth Circuit would look to acts

-8-

involving third parties to establish a Title IX claim.  The *University of Tenn.* decision essentially acknowledged that it was in tension with *Pahssen*, but declined to follow that case because the decision was "confusing."  *University of Tenn.*, 186 F. Supp.3d at 806 n.11.  But, *Kollaritsch* specifically cited and re-affirmed *Pahssen* on the very point *University of Tenn.* declined to follow. So *Kollaritsch* makes clear that disregarding *Pahssen* was error, and the *University of Tenn.* cannot still be good law.  As that decision was a significant part of this Court's decision to recognize a "policy of indifference" claim, reconsideration is warranted.

> **2.**      ***Kollaritsch* Demonstrates That Plaintiff's Deliberate Indifference Claim is Legally Invalid Because it Seeks To Hold MSU Liable For a Single Act of Sexual Assault.**

The Plaintiff's "policy of indifference" argument seeks to impermissibly hold MSU liable for a single sexual assault that was perpetrated against Plaintiff at an off-campus apartment. *Kollaritsch* clarified that *Davis* does not permit claims against educational institutions that are based on a single sexual assault, recognizing that both the majority and dissenting opinions in *Davis* agreed that the *Davis* decision "exclude[s] the possibility that a single act of harassment perpetrated by one student on one other student can form the basis for an actionable claim." *Kollaritsch*, 944 F.3d at 621 (quoting *Davis*, 526 U.S. at 677 (Kennedy, J., dissenting)).  Thus, "a single incident is insufficient on its own to state a claim."  *Id.*  In other words, *Davis* contemplates liability where a school's deliberate decision to ignore ongoing harassment allows the harassment to continue; it does not allow for liability for a school's alleged negligent conduct which might lead to a single sexual assault.

> **3.**      ***Kollaritsch* Makes Clear That Other Courts Have Misinterpreted How The Sixth Circuit Would Rule on a Policy of Indifference Claim**

As explained above, this Court relied on the *University of Tenn.* case for the proposition that the Sixth Circuit would look to acts involving third parties to establish a Title IX claim.

However, the *University of Tenn.* case misread Sixth Circuit precedent in looking to claims involving other victims and other perpetrator.

In finding that the Sixth Circuit would recognize a "policy of indifference" claim, this Court also relied *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1178–79 (10th Cir. 2007). The facts of that case are nothing like those alleged here and, more importantly, it is Sixth Circuit law that governs, not the law of the Tenth Circuit. Indeed, *Kollaritsch* specifically declined to follow the Tenth Circuit's interpretation of Title IX. *See Kollaritsch*, 944 F.3d at 623; *id.* at 628 (Thapar, J., concurring) (noting Court declined to follow *Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103–04 (10th Cir. 2019)).

Moreover, *Simpson* derived its "policy of indifference" theory from a single line in the *Gebser* case that "said that the requirements it imposed [i.e, actual knowledge and deliberate indifference] applied to 'cases like this one that do not involve official policy of the [school district].'" (quoting *Gebser*, 524 U.S. at 290). But *Gebser* was referring to situations where the educational institution intentionally put in place a policy with a discriminatory purpose and effect—such as a policy that would not allow female athletes to participate in a sports program. To the extent that the policy of indifference theory is based on actions by a school that have a discriminatory effect but not a discriminatory intent, Title IX does not recognize claims for disparate impact. *See*, *e.g.*, *Herman v. Ohio Univ.*, No. 2:19-cv-2012019, U.S. Dist. LEXIS 202813, at *21 (S.D. Ohio Nov. 22, 2019).

Moreover, having gone to great lengths to emphasize the limited circumstances in which a plaintiff may bring a private cause of action under Title IX, this language cannot possibly be used to create liability where a school is alleged to have not taken adequate steps to protect students from sexual assaults. Such a claim sounds in negligence, not intentional gender discrimination.

Congress did not intend to allow such liability, and it certainly did not do so in the clear and unambiguous way that is required under spending clause legislation. *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) ("[W]e have required that if Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously . . . , enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation.'" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981))); *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014) ("Clarity is demanded whenever Congress legislates through the spending power . . . .") (emphasis in original); *Kollaritsch*, 944 F.3d at 629 (Thapar, J., concurring) ("So even if there were any ambiguity, that very ambiguity would require us to adopt the less expansive reading of Title IX.").

* * *

If there were any doubt as to *Kollaritsch*'s impact on policy of indifference claims, consider *T.C. ex rel. S.C. v. Metropolitan Government of Metropolitan Government of Nashville & Davidson County, Tennessee*, No. 19-0508, 2020 U.S. App. LEXIS 2331, *2–3 (6th Cir. Jan. 24, 2020). In that case, the district court allowed a claim to go forward against a school district where plaintiffs "alleged that, **before** the specific incidents in question, [the district] had obtained the required 'notice' under Title IX because it knew of the general 'risk of the dissemination of sexual images of its students without their consent' based on prior incidents involving other students . . . even though [the school district] did not, for the most part, have warning about the specific students . . . or the specific acts that would occur." *Id.* at *2–3. (emphasis in original). The school district petitioned for interlocutory review, and the Sixth Circuit granted, vacated, and remanded for reconsideration in light of *Kollaritsch*, citing its statement in *Kollaritsch* that "a school's notice and the later sexual harassment caused by its unreasonable response 'must be inflicted against the

same victim.'" *Id*. at *3. The court explained that "[t]hat analysis could affect the district court's decision," but thought it "prudent to let the district court decide, in the first instance," whether that were so. *Id*.

For these reasons, reconsideration of the Court's August 21 Order is warranted. *Kollaritsch* and *T.C.* demonstrate that the Sixth Circuit will not accept Plaintiff's policy-of-indifference theory and that district courts should consider the effect that this intervening change in law has on prior orders permitting such claims to proceed. The Court should reconsider its August 21, 2019 Order and dismiss the Second Amended Complaint with prejudice.

**B.      Alternatively, the Court Should Certify Its Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b)**

Even if the Court declines to reconsider its decision, it should certify the August 21st Order for interlocutory appeal under 28 U.S.C. § 1292(b). At least two aspects of the August 21st Order warrant certification. First, as explained above, the Sixth Circuit has never recognized a pre-assault theory of liability under Title IX, and its recent decisions suggest that it would not do so. Second, even if a pre-assault theory were viable in certain limited circumstances, Plaintiff's theory of causation here is insufficient as a matter of law to state a claim. Certifying the August 21st Order for interlocutory appeal would allow the Sixth Circuit to rule on whether pre-assault claims are cognizable at all under Title IX and, if they are, clarify the pleading standard on causation that a plaintiff must meet in order to state a claim.

Plaintiff's pre-assault claim is the only claim at issue in this case. Certifying the August 21st Order for interlocutory appeal will allow these case-dispositive issues to be determined now, before both parties expend more substantial resources in discovery. A district court may certify an order for interlocutory appeal if the order (1) "involves a controlling question of law," for which (2) there is "substantial ground for difference of opinion," and (3) "an immediate appeal from the

order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three criteria are satisfied here.

### 1.  Whether Plaintiff Has Adequately Stated a Claim is a Controlling Question of Law

Whether an institution can be liable under Title IX for an alleged "policy of deliberate indifference" involving other complainants and other respondents, and if so, what a plaintiff must plead to adequately allege causation, are controlling questions of law. An order involves a "controlling" question of law under § 1292(b) if resolving the question "could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). "[W]hether [a] complaint states a facially valid claim" is "undoubtedly 'controlling.'" *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017); *Kollaritsch v. Michigan St. Univ. Bd. Of Trustees*, 2018 U.S. App. LEXIS 17379 at *2-*3 (6th Cir. June 25, 2018).

Plaintiff stipulated to dismissal of Count II and of that portion of her Title IX claim premised on MSU's response to her alleged sexual assault, and so the only remaining claim in this case is her Title IX pre-assault claim. (ECF 38, PageID.353). If the Sixth Circuit were to reject Plaintiff's theory that MSU can be liable under Title IX for an alleged policy of indifference to known, past instances of sexual harassment or assault, and/or hold that she has failed to allege that such a policy caused *her* alleged assault, her Title IX claim would fail and this litigation would be over. Furthermore, while not required to certify a question under 1292(b), the Sixth Circuit's resolution of these questions would set precedent by settling these open questions within this Circuit, providing clarity on important and recurring issues under the evolving law of Title IX.

### 2.  There are Substantial Grounds for Disagreement with the Court's August 21st Order

Even if the Court concludes that its August 21st Order was correct, there can be little doubt that there are substantial grounds for disagreement on important issues of law that must be decided

by the Sixth Circuit. *See Weckhorst v. Kansas State Univ.*, No. 16-CV-2255-JAR-GEB, 2017 U.S. Dist. LEXIS 135556, at *12–13 (D. Kan. Aug. 24, 2017) (certifying question of appeal even though "the Court [was] not persuaded" that its ruling was incorrect).

Courts in the Sixth Circuit have found that substantial grounds for a difference of opinion exist when either "(1) the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the Sixth Circuit; or (4) the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013). Substantial grounds for disagreement "exist[] where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. . . . Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *In re Trump*, 874 F.3d at 952; *see also West Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000) (substantial ground for difference of opinion may exist where Sixth Circuit "has not rendered a decision on the matter," and the relevant authorities are "susceptible to competing interpretations.").

As explained above, *Kollaritsch* makes clear that "policy of deliberate indifference" claims are not viable in the Sixth Circuit.  And even if there were doubt as to that issue, whether an institution can be liable under Title IX for an alleged policy of deliberate indifference is a question on which courts have disagreed. Some courts have recognized such a claim in differing circumstances. *See, e.g.*, *Karasek v. Regents of the Univ. of Calif.*, 948 F.3d 1150 (9th Cir. 2020) (permitting pre-assault claim to proceed); *Simpson v. Univ. of Col. Boulder*, 500 F.3d 1170 (10th

Cir. 2007) (permitting pre-assault claim to proceed where school had actual knowledge of incidents of sexual assault resulting from official recruitment program designed to show recruits a "good time"). Others have held that a generalized awareness of prior instances of sexual harassment or assault on campus does not satisfy the Supreme Court's requirement that institutions have actual knowledge of misconduct, which would otherwise "come too close to asking that [a] [u]niversity be held liable for its failure to purg[e] [its] schoo[l] of [all] actionable peer harassment, which *Davis* specifically warned is not the intent of Title IX." *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032 (GBD), 2018 U.S. Dist. LEXIS 28937, at *16 (S.D.N.Y. Feb. 21, 2018) (alterations in original; quotation marks omitted); *Schaefer v. Las Cruces Public Sch. Dist.*, 716 F. Supp. 2d 1052, 1081 (D. N.M. 2010) ("actual knowledge of three prior incidents of sexual assault by different assailants against different victims" did not amount to actual knowledge of impending assault on plaintiff).

Certification is also warranted because, as explained at length in MSU's Motion to Dismiss, even if a "policy of indifference" claim were viable, Plaintiff has not pleaded a legal basis to establish that MSU was the legal cause of her alleged assault.  Plaintiff's allegations of causation are far too implausible and attenuated to adequately state a claim for relief, and therefore there are substantial grounds for disagreement with the Court's August 21st Order.

In its August 21st Order, the Court seemed to recognize the challenge Plaintiff would face in proving causation, but held that MSU's causation argument was "better suited to a motion for summary judgment." (ECF 32, PageID.310). But, as the Supreme Court has made clear, a complaint must plead "allegations plausibly suggesting (not merely consistent with)" liability to adequately state a claim and survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A plaintiff whose "complaint is deficient under Rule 8 . . . is not entitled to

-15-

discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Plaintiff's claim fails to clear the hurdle the Supreme Court has put in place before opening the doors of discovery to a potentially massive factual controversy. *Id*. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'").

By holding that Plaintiff has adequately alleged causation, the August 21st Order materially departed from other decisions permitting pre-assault causes of action, which involved more plausible and direct chains of causation between a University's alleged deliberate indifference and the plaintiff's assault. *Simpson v. University of Colorado at Boulder*, on which the Court relied, (ECF 32, PageID.302–03), involved an *officially sanctioned* but unsupervised athletic recruiting program in which high school recruits were paired with female students for the purpose of being shown a "good time." 500 F.3d 1170, 1184–85 (10th Cir. 2007). There had been actual sexual assaults that occurred within the program and warnings from law enforcement that were ignored by the University. *Id*. The program, which was University sponsored and within the university's control, posed an "obvious" risk of sexual misconduct. *Id*. at 1181.

*Doe v. University of Tennessee* also involved a substantially more plausible chain of causation. The plaintiffs there, who claimed that they were assaulted by student athletes, alleged that the University had a practice of "interfering with and stopping the disciplinary process, concealing charges and investigations involving male athletes, arranging for specialized defense counsel for male athletes at UT facing criminal and sexual assault charges, [and] discourag[ing] reporting by creating a culture of known tolerance for and protection of misconduct," among other allegations. *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 793 (M.D. Tenn. 2016). The plaintiff also alleged that the University "encourag[ed] parties with underage drinking to benefit recruiting,"

and that athletes "engaged in other misconduct, sometimes in the presence of Athletic Department coaches, including non-sexual assaults, underage drinking, drug use, and other crimes, and that UT has been aware of these incidents and condoned, ignored, or failed to adequately discipline the behavior." *Id*. at 792–93.

Compared to those claims, Plaintiff's allegations are noticeably lacking. Although Plaintiff alleges in conclusory fashion that MSU "cultivated an environment in which female students became vulnerable to sexual assault," (ECF 36, PageID.346 at ¶ 173(e)), she does not allege any facts plausibly connecting MSU's treatment of claims involving other athletes years before to ***her assault***. Plaintiff proposes that MSU had an official policy of treating sexual assault complaints against male student-athletes "differently," which, in turn, was known to John Does 1–3 years later, which in turn, emboldened them to commit sexual assault on the belief that they could "get away with it" (notwithstanding that sexual assault is a crime that could land them in jail). However MSU may have handled cases involving other students, John Does 1–3's alleged criminal conduct at an off-campus apartment is an intervening act which, as a matter of law, was not foreseeable and cannot reasonably be charged to MSU.  Indeed, Title IX applies only to conduct that occurs within the University's substantial control, and because the alleged assault took place at an off-campus apartment, a Title IX claim is not available.  *See Brown v. Arizona*, No. CV-17-03536-PHX-GMS, 2020 U.S. Dist. LEXIS 42039, at *5–9 (D. Ariz. Mar. 11, 2020) (Title IX claim not available for off campus assault, even though Plaintiff alleged that school had knowledge of other acts of misconduct by the perpetrator that occurred on campus).

MSU should not be put to an expensive fishing expedition into how MSU handled other cases of sexual assault, potentially involving sensitive and confidential files of other students, when there is no plausible scenario in which Plaintiff could ever prove causation. That was the

whole point behind the Supreme Court's decisions in *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 558 ("a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."); *Iqbal*, 556 U.S. at 682 (noting that it is not enough to allege discriminatory intent where there are more plausible inferences based on the pleaded facts).

### 3.    Certifying the Court's August 21 Order for Interlocutory Appeal Would Materially Advance the Ultimate Termination of this Litigation

"An interlocutory appeal materially advances the ultimate termination of the litigation when it save[s] judicial resources and litigant expense." *Bates v. Dura Auto. Sys., Inc.*, No. 1:08-0029, 2009 U.S. Dist. LEXIS 67301, at *15 (M.D. Tenn. July 29, 2009) (internal citations omitted). In other words, this requirement "means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Thompson v. Bruister & Assocs.*, No. 3:07-00412, 2013 U.S. Dist. LEXIS 139374, at *21 (M.D. Tenn. Sept. 27, 2013); *see Gaylord Ent'mt Co. v. Gilmore Ent'mt Group*, 187 F. Supp. 2d 926, 957 (M.D. Tenn. 2001) (stating "interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens").

Certifying an immediate appeal is an efficient and prudent means of advancing this litigation. This case remains in its early stages, and little discovery has occurred. *See Estate of Hickmam v. Moore*, Nos. 3:09-CV-69 & 3:09-CV-102, 2011 U.S. Dist. LEXIS 28964, at *27 (E.D. Tenn. Mar. 21, 2011) (noting that early stage of litigation supports certifying case for interlocutory appeal). As explained above, the questions presented are dispositive of Plaintiff's only claim, and a judgment by the Sixth Circuit in MSU's favor would end the litigation. *See Kollaritsch v. Mich. State Univ. Bd. of Trs.*, No. 17-2445/18-0101, 2018 U.S. App. LEXIS 17379, at *3–4 (6th Cir. June 25, 2018) (granting interlocutory appeal) (question of law "controlling because clarifying the

pleading requirement will 'materially affect' whether the Title IX claims can proceed"). Indeed, this Court's certification of the decision on MSU's Motion to Dismiss in *Kollaritsch* proves the point—by certifying that case for an immediate appeal, the parties and the Court avoided the costs and burdens of discovery in a case that the Sixth Circuit concluded should not proceed.  The same is true here.

It is in the interest of all parties to seek a ruling from the Sixth Circuit on issues that it inevitably must address before incurring costly discovery that is likely to intrude into highly sensitive and confidential areas involving parties not before the Court.

## III.   Conclusion

For the reasons discussed above, MSU respectfully requests that the Court reconsider its August 21st Order and dismiss Plaintiff's Second Amended Complaint. Alternatively, MSU requests that the Court certify the August 21 Order for interlocutory appeal.

Date:  March 26, 2020                    Respectfully submitted,

s/ Michael E. Baughman

_____
Michael E. Baughman, Esq.
Attorney I.D. No. 78690
baughmam@pepperlaw.com
Kristin H. Jones, Esq.
Attorney I.D. No. 85725
joneskh@pepperlaw.com
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Matthew J. Lund, Esq. (P48632)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075
(248) 359-7370
lundm@pepperlaw.com

*Attorneys for Defendant Michigan State University*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 26th of March, 2020, I electronically filed the foregoing Michigan State University's Motion for Reconsideration, or, in the Alternative, to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b), and Memorandum of Law in Support, with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Respectfully submitted,

*s/ Michael E. Baughman*

_____

Michael E. Baughman, Esq.
Attorney I.D. No. 78690
baughmam@pepperlaw.com
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

-21-